## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH COLLORA, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| MCDONALD'S CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Joseph Collora ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant McDonald's Corporation ("Defendant" or "McDonald's"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiff brings this Class action lawsuit on behalf of himself and similarly situated consumers ("Class Members") who purchased for personal, family, or household use, certain of Defendant's Products – namely, Defendant's Chicken McNuggets, Cookies, and/or French Fries (the "Products"), which are unfit for human consumption because the packaging in which it is contained—and is essential and integral to delivering the Product to the consuming public[1]—

---

[1] "Products" as used herein means the food items (e.g. Chicken McNuggets, Cookies, and/or French Fries) as well as any and all containers, wrappers, and packaging used to package, seal, protect, or deliver the food items to the consumer. These particular Products have been independently tested and found to contain PFAS.

contains unsafe per- and polyfluoroalkyl substances ("PFAS").[2]

2.      PFAS are a group of synthetic chemicals known to be harmful to both the environment and humans.  Because PFAS persist and accumulate over time, they are harmful even at very low levels.  Indeed, "PFAS have been shown to have a number of toxicological effects in laboratory studies and have been associated with thyroid disorders, immunotoxic effects, and various cancers in epidemiology studies."[3]

3.      In fact, scientists are studying—and are extremely concerned about—how PFAS affect human health.  Consequently, the CDC outlined "a host of health effects associated with PFAS exposure, including cancer, liver damage, decreased fertility, and increased risk of asthma and thyroid disease."[4]

4.      Despite Defendant's outward representations to consumers that its Products are "safe,"[5] and "sustainable,"[6] including on its website and the Products' packaging—which is an essential and integral part of delivering the Products to consumers—independent research

---

[2] Discovery may reveal that additional McDonald's products are within the scope of this Complaint. Accordingly, Plaintiff reserves the right to include additional food products identified throughout the course of discovery

[3] Nicholas J. Heckert, et al. "Characterization of Per- and Polyfluorinated Alkyl Substances Present in Commercial Anti-fog Products and Their In Vitro Adipogenic Activity," *Environ. Sci. Technol.* 2022, 56, 1162-1173, 1162.

[4] Harvard T.H. Chan Sch. Of Pub. Health, Health Risks of widely used chemicals may be underestimated (June 27, 2018), https://www.hsph.harvard.edu/news/hsph-in-the-news/pfas-health-risks-underestimated/ (last visited Mar. 30, 2022).

[5] *See, e.g.*, McDonald's, "Our Food Philosophy," https://www.mcdonalds.com/us/en-us/about-our-food/our-food- philosophy.html (last visited Mar. 30, 2022) ("At McDonald's . . . [w]e take great care that what we serve every day is safe, great quality, offers choice and is produced in a responsible way.").

[6] *See, e.g.*, McDonald's, "Packaging & Waste," https://corporate.mcdonalds.com/corpmcd/our-purpose-and- impact/our-planet/packaging-and-waste.html (last visited Mar. 30, 2022) ("Meeting Customer Expectations of Convenience, Safety and Sustainability . . . Together with our Franchisees, suppliers and industry partners, we invest in research and development of new materials and packaging designs that fit our customers' needs for convenience, food safety and sustainability.").

conducted by Consumer Reports[7] determined that the Products' packaging contains total organic fluorine, a measure of PFAS used by Consumer Reports at levels of high concern:

- For the French Fries, 250.3 parts per million (ppm) of organic fluorine;

- For the Cookies: 250.0 ppm of organic fluorine; and

- For the Chicken McNuggets: 219.0 ppm of organic fluorine. [8]

5.      As a point of reference, in 2023 California will ban food packaging that has over 100 parts per million organic fluorine or more; Denmark already bans food packaging with just over 20 part per million organic fluorine, representing both jurisdiction's level of concern for PFAS[9].

6.      The potential for contamination of a consumer's food item with PFAS from packaging is omitted from Defendant's packaging and marketing of the Products.

7.      Thus, based on Defendant's omissions, a reasonable consumer would expect that the Products can be safely purchased and consumed as marketed and sold. However, the Products are not safe, posing a significant health risk to unsuspecting consumers. Nor are the Products sustainable. Yet, neither before nor at the time of purchase does Defendant notify consumers like Plaintiff that the Products are unsafe and harmful to the environment, contains heightened levels of PFAS, or should otherwise be approached with caution.

8.      Accordingly, Plaintiff brings his claims against Defendant individually and on behalf of a class of all other similarly situated for (1) Fraud; (2) Unjust Enrichment; (3) the New

---

[7] Kevin Loria, "Dangerous PFAS Chemicals Are in Your Food Packaging," *Consumer Reports*, https://www.consumerreports.org/pfas-food-packaging/dangerous-pfas-chemicals-are-in-your-food-packaging-a3786252074/ (last visited Apr. 12, 2022).
[8] According to Toxin Free USA, "organic fluorine results identify a quantity of organofluorine compounds (e.g., PFAS) and excludes the possibility that fluorine may be present from other or natural sources." *See GMO Free v. CoverGirl Cosmetics, et al.*, Case No. 2021-CV-0046786B (D.C. Super. Dec. 20, 2021), Docket No. 1, ¶¶ 30-31.
[9] "Dangerous PFAS Chemicals Are in Your Food Packaging," *Consumer Reports*. (Link *supra*.)

York General Business Law § 349; and (4) the New York General Business Law § 350.

## THE PARTIES

9.     Plaintiff Joseph Collora is a natural person and citizen of New York who resides in Lindenhurst, New York.  Plaintiff Collora has purchased Defendant's Products, including the French Fries, Cookies, and Chicken McNuggets, at various points throughout the past  several years during all applicable statutory periods, visiting the McDonald's restaurant at 221 Sunrise Hwy, Lindenhurst, NY 11757 about twice monthly. Mr. Collora purchased Chicken McNuggets from this McDonald's as recently as March 29, 2022; French Fries as recently as January 10, 2022; and Cookies as recently as January 10, 2022.

10.     Prior to his purchase, Mr. Collora reviewed the labeling, packaging, and marketing materials of his purchased Products, including those set out herein, which included omissions of the potential for PFAS contamination. Mr. Collora understood that based on Defendant's claims, that Products were safe for consumption, and otherwise a sustainable product. Mr. Collora reasonably relied on these representations and warranties in deciding to purchase the Products, and these representations and warranties were part of the basis of the bargain in that he would not have purchased the Products, or would not have purchased them on the same terms, if the true facts had been known. As a direct result of Defendant's material misrepresentations and omissions, Mr. Collora suffered and continues to suffer, economic injuries.

11.     Mr. Collora continues to desire to purchase the Products from Defendant, as he has done on a twice monthly basis. However, Mr. Collora is unable to determine if the Products are actually safe and sustainable. Mr. Collora understands that the composition of the Products may change over time. But as long as Defendant continues to market its Products as

"safe" and "sustainable" and further omit the potential for PFAS contamination, he will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and its competitor's Products. Mr. Collora is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products are marketed, labeled, packaged, and advertised as safe and sustainable, are in fact safe and sustainable.

12.     Defendant McDonald's Corporation is a Delaware corporation with its principal place of business located in Chicago, Illinois.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, are citizens of different states than Defendant.

14.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in this District, and the acts and transactions giving rise to this action occurred in this District.

15.     This Court is the proper venue for this action pursuant to pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located in this District and because a substantial part of the events, omissions, and acts giving rise to Plaintiff's claims herein occurred in this District.

## COMMON FACTUAL ALLEGATIONS

### A.    Food And Consumer Preferences

16.    According to a recent survey, chemicals in food (including carcinogens or cancer-causing chemicals) represents the most important food safety issue to consumers.[10]  Consumers ranked this concern more highly than any other concern, including foodborne illness from bacteria and use of pesticides.[11]

17.    At the same time, awareness of, and an inclination toward, safer products is guiding consumer choices.  One survey, for instance, found that "when asked to choose the top three factors they prioritize when deciding between products, the majority of consumers surveyed said they prioritize the health/safety of products (71%) and products free of certain toxic chemicals (70%)."[12]

18.    These findings extend to the packaging of products, with 82% of consumers agreeing that "it is important for brands to balance safety and concern for the environment when designing product packaging."[13]

19.    Additionally, "[t]he majority of shoppers . . . are willing to spend more for a product they know is safer, with 42% willing to spend 5-15% more, 36% willing to spend 16-25% more, and 17% willing to spend 1-5% more."[14]

---

[10] Tom Neltner, "Chemicals in food continue to be a top food safety concern among consumers," (Sept. 16, 2021), https://blogs.edf.org/health/2021/09/16/chemicals-in-food-continue-to-be-a-top-food-safety-concern-among- consumers/ (last visited Mar. 30, 2021).

[11] Id.

[12] Made Safe, "What Shoppers Want: Safe & Healthy Products," https://www.madesafe.org/wp-conent/uploads/2017/07/What-Shoppers-Want.pdf (last visited Mar. 22, 2022).

[13] Gray, "New Consumer Packaging Trends Are Changing the Game for Food & Beverage Processors," https://www.gray.com/insights/new-consumer-packaging-trends-are-changing-the-game-for-food-beverage- processors/ (last visited Mar. 22, 2022).

[14] Made Safe, "What Shoppers Want," at 3.

20.     Thus, there is enormous incentive for companies such as Defendant to market its Products as safe and sustainable. In fact, the vast majority of Defendant's mission statement regarding food safety, in its own words, can be summed up as follows:

> "Providing safe food is our number one priority and a responsibility that we take seriously."[15]

21.     Defendant has amplified this ethos in its packaging, which, as Defendant notes, "lives seamlessly with the brand identity, as they were created in parallel over the course of four years. The point-of-view and principles hold true across every menu item to make way for a cohesive system[.]"[16]

22.     Thus, when consumers, like Plaintiff interact with Defendant's packaging, they expect it to embody Defendant's brand, which as noted above, has continuously emphasized safety and sustainability.

23.     As Defendant notes: "The safety and quality of our food is a top priority, and we are constantly innovating the strive to meet and exceed our customers' expectations."[17]

24.     However, as described in the next section, Defendant's Products are not safe for consumption, and poses a critical risk to the safety and health of consumers.

**B.      PFAS In Food Packaging Is Harmful To Humans And The Environment**

25.     Consumer Reports' study followed the 2018 groundbreaking research conducted by Toxic Free Future, which first detected PFAS in the Product packaging.[18]

---

[15] McDonald's, "Food Safety, https://corporate.mcdonalds.com/corpmcd/our-purpose-and-impact/food-quality-and- sourcing/food-safety.html (last visited Mar. 30, 2022).
[16] Packaging Europe, "The inside story of the McDonald's packaging rebrand," (Mar. 11, 2021), https://packagingeurope.com/the-inside-story-of-the-mcdonalds-packaging-rebrand/347.article (last visited Mar. 30, 2022).
[17] *Id.* at 10.
[18] Jen Dickman, *et al.* "Packaged in Pollution: Are food chains using PFAS in packaging?" https://toxicfreefuture.org/packaged-in-pollution/ (last visited Mar. 30, 2022).

26.     Nonetheless, more than three years later, Consumer Reports revealed that PFAS had not been removed from the Products' packaging.  That results of that research is set out below:

| McDonald's | | |
|---|---|---|
| Bag for french fries | ■■ | 250.3 |
| Bag for cookies | ■■ | 250.0 |
| Bag for Chicken McNuggets | ■■ | 219.0 |
| Container for Big Mac | ■■ | 195.3 |
| Wrapper for double cheeseburger | | 15.0 |
| Container for Chicken McNuggets | | 13.5 |
| Container for french fries | | 7.5 |
| Wrapper for Egg McMuffin | | 7.0 |
| Wrapper for McChicken sandwich | | ND |

27.     The reason companies like Defendant use PFAS in their food packaging products is simple: the coating acts "as a barrier to keep grease from escaping" and "from leaking into people's hands."[19]

28.     But PFAS are not necessary for this intended outcome.  Indeed, numerous of Defendant's competitors' products have been tested by researchers and found to contain no

---

[19] Iowa State University, "New study calls for mitigation, monitoring of common grease-proofing food packaging chemicals," *News Service* (Oct. 19, 2021), https://www.news.iastate.edu/news/2021/10/19/pfas2021 (last visited Mar. 30, 2022).

detectable levels of organic fluorine.[20] Accordingly, Defendant would have had knowledge that it could produce the Products' packaging without the heightened levels of PFAS inherent in its current composition.

29.     Yet, Defendant chose not to, and instead concealed this information from consumers, to increase the cost savings associated with using these chemicals.

30.     This has not been without consequences for consumers, as PFAS in food packaging migrates[21] onto the food, exposing consumers to PFAS via ingestion.[22]

31.     Worse yet, all PFAS contain carbon-fluorine bonds—one of the strongest in nature—which make them highly persistent both in the environment and in human bodies.

32.     That these substances are harmful to the human body is beyond dispute. In a 2019 study, for example, the U.S. Department of Health and Human Services' National Toxicology Program found that PFAS have adverse effects on the human organ systems, with the greatest impact seen in the liver and thyroid hormone.[23]

33.     The Centers for Disease Control's Agency for Toxic Substances and Disease Registry has also recognized that exposure to high levels of PFAS may impact the immune system and reduce antibody responses to vaccines.[24]

34.     In total, this research demonstrates that the risk of severe complications arising from exposure to PFAS is both credible and substantial.

---

[20] See supra n. 27 and supra n. 6

[21] T.H. Begley, "Migration of fluorochemical paper additives from food-contact paper into foods and food simulants," Food Additives & Contaminants: Part A, 25:3, 284-390, https://www.tandfonline.com/doi/abs/10.1080/02652030701513784

[22] See Nat'l Toxicology Program, Per- and Polyfluoroalkyl Substances (PFAS), https://ntp.niehs.gov/whatwestudy/topics/pfas/index/html (Aug. 3, 2021) (last visited Mar. 30, 2022).

[23] Environmental Protection Agency, PFAS Explained, https://www.epa.gov/pfas/pfas-explained (last visited Mar. 30, 2022).

[24] Agency for Toxic Substances and Disease Registry, "What are the health effects of PFAS," https://www.atsdr.cdc.gov/pfas/health-effects/index.html (June 24, 2020) (last accessed Mar. 30, 2022).

**C.    Defendant's Misrepresentation and Omissions Are Actionable**

35.    Plaintiff and the Class were injured by the full purchase price of the Product because the Products are worthless, as Defendant has omitted the PFAS contamination risk due to the Products' packaging.

36.    Plaintiff and Class Members bargained for products that are marketed and warranted as safe for consumption and sustainable, and were deprived of the basis of their bargain when Defendant sold them a product in packaging containing dangerous substances with well-known health and environmental consequences.

37.    No reasonable consumer would expect that a product marketed and warranted as safe and sustainable would pose a risk to their health, safety, and well-being, or that it would contain dangerous PFAS, which are indisputably linked to harmful health effects in humans and the environment.   Accordingly, Plaintiff and Class Members suffered economic injuries as a result of purchasing the Product.

38.    As the Products expose consumers to PFAS that pose a risk to consumers' health, the Products are not fit for consumption by humans.  Plaintiff and the Class are further entitled to damages for the injury sustained in being exposed to high levels of toxic PFAS, damages related to Defendant's conduct, and injunctive relief.

39.    Moreover, because these facts relate to a critical safety-related deficiency in the Products, Defendant was under a continuous duty to disclose to Plaintiff and Class Members the true standard, quality, and grade of the Products and to disclose that the Products contained substances known to have adverse health effects.  Nonetheless, Defendant concealed and affirmatively misrepresented the Products, as discussed herein.

40.    Although Defendant is in the best position to know what content it placed on its

website and in marketing materials during the relevant timeframe, and the knowledge that Defendant had regarding the PFAS and its failure to disclose the existence of PFAS in the Products to consumers, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

41.    **WHO**: Defendant made material misrepresentations and/or omissions of fact about the Products through its labeling, website representations, and marketing statements, which include the statements and warranties that the Products are safe and sustainable. These representations constitute omitted material information regarding harmful chemicals in the Products' packaging which is essential and integral to delivering the Products to the consumer.

42.    **WHAT**: Defendant's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Products contain substances—PFAS—that are widely known to have significant health repercussions. Thus, Defendant's conduct deceived Plaintiff and Class Members into believing that the Products are safe and sustainable, when they is not. Defendant knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class Members in making their purchasing decisions, yet they continued to pervasively market the Products in this manner.

43.    **WHEN**: Defendant made material misrepresentations and/or omissions during the putative class periods, including prior to and at the time Plaintiff and Class Members purchased the Products, despite its knowledge that the Products' packaging contained harmful substances.

44.    **WHERE**: Defendant's marketing message was uniform and pervasive, carried through material misrepresentations and/or omissions on the labeling of the Products' packaging, website, and through marketing materials.

45.    **HOW**: Defendant made material misrepresentations and/or failed to disclose

material facts regarding the Products, including the presence of PFAS.

46.    **WHY**: Defendant made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Products, the effect of which was that Defendant profited by selling the Products to millions of consumers.

47.    **INJURY**: Plaintiff and Class Members purchased, paid a premium, or otherwise paid more for the Products when they otherwise would not have absent Defendant's misrepresentations and/or omissions.

## TOLLING AND ESTOPPEL OF THE STATUTE OF LIMITATIONS

48.    Defendant would have had actual knowledge for years that the Products' packaging contains harmful chemicals such as PFAS.

49.    Although Defendant was aware of the deception in its labeling given the inclusion of PFAS in the Products despite claims of the Products' safety and sustainability, Defendant took no steps to warn Plaintiff or Class Members of risks related to PFAS in the Products.

50.    Despite its knowledge, Defendant has fraudulently misrepresented the risks of the Products. Defendant had a duty to disclose the true nature and quality of the Products and to disclose the health and safety risks associated with the Products.

51.    Defendant made, and continues to make, affirmative misrepresentations to consumers, to promote sales of the Products, including that the Products are safe and sustainable.

52.    Defendant concealed material facts that would have been important to Plaintiff and Class Members in deciding whether to purchase the Products. Defendant's concealment was knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members. Accordingly, Plaintiff and Class Members reasonably relied upon Defendant's

concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

53.     The PFAS included in the formulation, design and/or manufacture of the Products packaging were not reasonably detectible to Plaintiff and Class Members.

54.     At all times, Defendant actively and intentionally concealed the existence of the PFAS and failed to inform Plaintiff or Class Members of the existence of the PFAS. Accordingly, Plaintiff and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

55.     Defendant's statements, words, and acts were made for the purpose of suppressing the truth that the Products' packaging contained harmful chemicals.

56.     Defendant concealed or misrepresented the PFAS for the purpose of delaying Plaintiff and Class Members from filing a complaint on their causes of action.

57.     As a result of Defendant's active concealment of the PFAS and/or failure to inform Plaintiff and Class Members of the PFAS, any and all applicable statute of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, Defendant is estopped from relying on any statute of limitations in light of its active concealment of the potentially harmful nature of the Products.

58.     Further, the causes of action alleged herein did not accrue until Plaintiff and Class Members discovered that the Products contained PFAS, which, at the very earliest, would have been in March 2022. Plaintiff and Class Members had no realistic ability to discern that the Products contained PFAS until after the widely publicized Consumer Reports study. Plaintiff and Class Members were hampered in their ability to discover their causes of action because of Defendant's active concealment of the existence of PFAS in the Products and of the Products'

true nature.

## CLASS ALLEGATIONS

59.　Plaintiff brings this action on behalf of himself and the following Classes pursuant

to Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

>   **National Class:** All persons within the United States who, during the maximum
>   period of time permitted by law, purchased Defendant's Products primarily for
>   personal, family, or household purposes, and not for resale.

>   **New York Subclass:** All persons residing in New York who, during the
>   maximum period of time permitted by law, purchased the Products primarily for
>   personal, family or household purposes, and not for resale.

60.　Excluded from the Classes are (a) any person who purchased the Products for

resale and not for personal or household use, (b) any person who signed a release of any

Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate

family members of the officers, directors or employees, of any Defendant or any entity in which

a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any

Defendant, (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their

immediate family members, and (f) Class Counsel.

61.　As a result of additional information obtained through further investigation and

discovery, the above-described Classes may be modified or narrowed as appropriate.

62.　At this time, Plaintiff does not know the exact number of members of the

aforementioned Class and Subclasses (referred to herein collectively as "Class Members" or

"Subclass Members"). However, given the nature of the claims and the number Defendant's

restaurants in the United States selling Defendant's Products, Plaintiff believes that Class and

Subclass Members are so numerous that joinder of all members is impracticable.

63.　There is a well-defined community of interest in the questions of law and facts

involved in this case. Questions of law and facts common to Class Members predominate over questions that may affect individual Class Members include:

<ol type="a">
<li>whether the Products contain PFAS;</li>

<li>whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;</li>

<li>whether Defendant's conduct was unfair and/or deceptive;</li>

<li>whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiff and the Class;</li>

<li>whether Plaintiff and the Class sustained damages with respect to the common law claims asserted, and if so, the proper measure for their damages.</li>
</ol>

64. With respect to the New York Subclass, additional questions of law and fact common to the members include whether Defendant violated New York General Business Law §§ 349 & 350.

65. Plaintiff's claims are typical of those of the Class because Plaintiff, like all Class Members, purchased, in a typical consumer setting, Defendant's Products at issue in this Complaint—Chicken McNuggets, Cookies, and French Fries—and Plaintiff sustained damages from Defendant's wrongful conduct.

66. Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class Members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Class Members will be fairly and adequately protected by Plaintiff and his counsel.

67. The class mechanism is superior to other available means for the fair and efficient

adjudication of the claims of Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of liability issues.

<u>**COUNT I**</u>
**COMMON LAW FRAUD**
**(On Behalf of the National Class,**
**or in the alternative the New York Subclass)**

68.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

69.     Plaintiff brings this claim individually and on behalf of the National Class, or in the alternative, the New York Subclass.

70.     Rule 9(b) of the Federal Rules of Civil Procedures provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

•     **WHO**: Defendant made material misrepresentations and/or omissions of fact about the Products through its labeling, website representations, and marketing statements, which include the statements and warranties that

16

the Products are safe and sustainable. These representations constitute omitted material information regarding harmful chemicals in the Products' packaging which is essential and integral to delivering the Products to the consumer.

- **WHAT**: Defendant's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Products contain substances—PFAS—that are widely known to have significant health repercussions. Thus, Defendant's conduct deceived Plaintiff and Class Members into believing that the Products are safe and sustainable, when they are not. Defendant knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class Members in making their purchasing decisions, yet it continued to pervasively market the Products in this manner.

- **WHEN**: Defendant made material misrepresentations and/or omissions during the putative class periods, including prior to and at the time Plaintiff and Class Members purchased the Products, despite its knowledge that the Products' packaging contained harmful substances.

- **WHERE**: Defendant's marketing message was uniform and pervasive, carried through material misrepresentations and/or omissions on the labeling of the Products' packaging, website, and through marketing materials.

- **HOW**: Defendant made material misrepresentations and/or failed to disclose material facts regarding the Products, including the presence of

PFAS.

- **WHY**: Defendant made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Products, the effect of which was that Defendant profited by selling the Products to millions of consumers.

71.     As alleged herein, at the time Plaintiff and Class Members purchased the Products, Defendant did not disclose, but instead concealed and misrepresented the Products as safe and sustainable.

72.     Defendant also knew that its omissions and misrepresentations regarding the Product were material, and that a reasonable consumer would rely upon Defendant's representations (and corresponding omissions) in making purchasing decisions; nevertheless, Defendant did make such omissions in their marketing, advertising, and on the Products' labeling. In reliance on these representations and omissions, Plaintiff and Class Members were induced to, and did, pay monies to purchase the Products.

73.     Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true nature of the Products.

74.     Plaintiff and Class Members would have been reasonable in relying on Defendant's misrepresentations (and corresponding omissions) in making their purchasing decisions.

75.     Plaintiff and Class Members sustained damages as a result of their reliance on Defendant's omissions and misrepresentations, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

**COUNT II**
**UNJUST ENRICHMENT**
**(On Behalf of the National Class**
**or in the alternative the New York Subclass)**

76.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

77.     Plaintiff brings this claim individually and on behalf of the National Class, or in the alternative the New York Subclass.

78.     To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

79.     Plaintiff and Class Members conferred benefits on Defendant by purchasing the Products.

80.     Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because Defendant failed to disclose that the Products were unfit for their intended purpose as they were unsafe for use.  These omissions caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts were known.

81.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

**COUNT III**
**VIOLATION OF THE NEW YORK DECEPTIVE TRADE PRACTICES ACT,**
**NEW YORK GEN. BUS. LAW § 349, *ET SEQ.***
**(On behalf of the New York Subclass)**

82.     Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

83.     By reason of the acts set forth above, Defendant has been and is engaged in

deceptive acts or practices in the conduct of a business, trade, or commerce in violation of New York's General Business Law § 349.

84.    Defendant engaged in unfair and/or deceptive conduct by, *inter alia*, omitting the presence of PFAS in the Products' packaging.

85.    The public is likely to be damaged because of Defendant's deceptive trade practices or acts. Specifically, Defendant's false, deceptive, or misleading statements implicate the health and safety of those consumers deceived by Defendant.

86.    Defendant directs its conduct at consumers, as Defendant's omissions are contained in marketing targeted toward consumers, including social media and retail product packaging. As such, Defendant's conduct as alleged herein is consumer oriented.

87.    Defendant's deceptive acts are likely to mislead a reasonable consumer acting reasonably under the circumstances.

88.    Defendant's deceptive acts affect the public interest in the state of New York because, upon information and belief, consumers located in New York have purchased Defendant's Products in reliance on Defendant's false, deceptive, or misleading statements.

89.    As a result of Defendant's use of employment of unfair or deceptive acts or business practices, Plaintiff and each of the other Members of the New York Subclass have sustained damages in an amount to be proven at trial.

**COUNT IV**
**VIOLATION OF THE NEW YORK DECEPTIVE TRADE PRACTICE ACT,**
**NEW YORK GEN. BUS. LAW § 350, *ET SEQ.***
**(On behalf of the New York Subclass)**

90.    Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

91.    Defendant has made material, false or misleading statements or representations of

fact about the Products. Specifically, Defendant has literally, impliedly, or by necessary implication omitted the presence of PFAS in the packaging, thereby representing that the Products *do not* contain PFAS, which is not true.

92.     Defendant's acts constitute false advertising in the conduct of business, trade, or commerce, or in the furnishing of any service in the state of New York in violation of New York's General Business Law § 350.

93.     The public is likely to be damaged because of Defendant's deceptive trade practices or acts. Specifically, Defendant's false or misleading statements implicate the health and safety of those consumers deceived by Defendant.

94.     As such, Defendant's conduct as alleged herein is consumer oriented.

95.     As a result of Defendant's material, false or misleading statements or representations of fact about the Products, Plaintiff and each of the other Members of the New York Subclass have sustained damages in an amount to be proven at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Class and the New York Subclass and Plaintiff's attorneys as Class Counsel;

(b)     For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff, the Class, and the New York Subclass on all counts asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper;

(h)     For an order awarding Plaintiff and the Class and Illinois Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: April 13, 2022                          Respectfully submitted,

By:   _/s/ Kevin Laukaitis_
Kevin Laukaitis**
Jonathan Shub**
**SHUB LAW FIRM LLC**
134 Kings Hwy E., 2nd Fl.
Haddonfield, NJ 08033
T: (856) 772-7200
F: (856) 210-9088
klaukaitis@shublawyers.com
jshub@shublawyers.com

Brian M. Hogan*
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel: (224) 632-4500
bhogan@fkmlaw.com

Jonathan M. Jagher
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 234-6487
jjagher@fkmlaw.com

*Designated as Local Counsel
** Admitted to Illinois General Bar

*Attorneys for Plaintiff and the
Proposed Classes*